INHABITANTS OF WELD vs. INHABITANTS OF FARMINGTON.

Franklin. Decided June 7, 1878.

*Pauper. Evidence.*

| 68 | 301 |
| 93 | 184 |
| | |
| 68 | 301 |
| 104 | 259 |

A record of town orders, given by a town for the support of a pauper on the ground that he had a settlement therein, is admissible in evidence on the question of his settlement, not conclusive as an estoppel, but for the jury to weigh.

ON EXCEPTIONS AND MOTION of the defendants to set aside the verdict which was for the plaintiffs and for a new trial on the ground of newly discovered evidence.

ASSUMPSIT, for supplies furnished to Abner B. Crocker and family as paupers of the defendant town.

The only issue raised and tried was the settlement of the pauper, Abner B., in the defendant town. It was not claimed by the plaintiffs that Abner B. ever gained a settlement there in his own

right or that Hiram Crocker, the father of Abner B., ever did, but it was claimed that Jabez B. Crocker, the father of Hiram and grandfather of Abner B., gained a settlement in the defendant town by living and having his home therein March 21, 1821 ; and that Hiram was a minor then and derived his settlement from Jabez, and that Abner derived his settlement from Hiram.

The defendants besides controverting the above issue presented by the plaintiffs, offered evidence tending to show that Hiram, the father of Abner, gained a settlement in New Vineyard by living and having his home there continuously from 1853 to 1861 ; and the plaintiffs, not denying the residence during that time, offered evidence tending to show that Hiram was in need and received supplies from the town of New Vineyard, in 1857.

The defendants requested the presiding justice to instruct the jury as follows :

" I. That even if they find that Jabez B. Crocker had his home in Farmington, March 21, 1821, they would not be authorized to find a verdict for the plaintiffs without sufficient evidence that neither Hiram Crocker, the son of Jabez, nor Abner, the pauper named in the writ, ever gained a settlement in his own right.

" II. That no presumption of either law or fact will authorize. the jury to find that they (Hiram and Abner) did not gain a settlement in their own right in the fifty-four years that elapsed between 1821 and the time the supplies sued for were furnished.

" III. That unless it is proved by a preponderance of evidence that Hiram Crocker was a minor and having his home in the family of Jabez, his father, on March 21, 1821 ; or being of age, had his home in Farmington on that day, the plaintiffs cannot recover, even if they find that Jabez had his home in Farmington on that day.

" IV. The overseers of the poor or selectmen have no authority by their mere acts or declarations to change the settlement of a pauper from one town to another, and confess away the rights of a town and subject it to liabilities and burdens by any of their managements. This is no part of their duties."

These requests were not given except as appears in the charge, which made part of the exceptions ; and to the refusal to give

them and to so much of the charge as relates to the points contained in the requests, and to the admission of town orders given by the selectmen of Farmington from time to time from 1839 to 1851, and to so much of the charge as relates to them and to their effect and weight as evidence, the defendants alleged exceptions.

The instruction given on the point raised by the fourth request appears in the opinion.

*J. Baker* with *S. C. Belcher*, for the defendants.

There were but two issues of fact to the jury: 1. Did the grandfather have his home in the Rowen house in the defendant town, March 21, 1821; 2. Were supplies furnished Hiram in 1857, so as to prevent his settlement in New Vineyard. The town orders from 1839 to 1851 could have no bearing on these issues.

We contend these orders are not admissible to affect the settlement of a pauper in any case. The liability of towns to support paupers is created by statute. The statute establishes eight rules for fixing the settlement of paupers, depending upon certain facts as to the residence of the pauper or his ancestors, and none of them provides for admissions by towns or town officers. If admitted at all, the jury may render a verdict solely on the force of the orders, and a town be made liable for the support of a pauper outside of statute rules,—by a sort of judicial legislation.

But it may be said that a town having by its officers admitted the settlement of a pauper to be therein and rendered him support, is estopped to deny his settlement. This, too, would be a new mode not found in the statute; the statute itself has specified the instances in which a town may be estopped to deny a settlement. 1. When a judgment has been recovered between the same towns for the support of the same pauper. R. S., c. 24, § 25. 2. When a town has failed to return an answer within two months. § 28. These are the only estoppels recognized by the statute, and the expression of these is the exclusion of others. *Bridgewater* v. *Dartmouth*, 4 Mass. 273-5.

But it is said that the acts of the overseers within the scope of their authority bind the town, and that when they relieve persons

destitute in their town, they are within their duty as imposed by statute, and the town must pay. That may be admitted. The acts of the overseers in drawing orders are binding between the parties to the orders. A contract for supplies to support paupers may be enforced in law against the town by the other contracting party, but by no one else. The other parties to the orders were not in court. It is denied that they were admissible for the collateral purpose to affect the settlement.

The court, by refusing to give the instructions requested and negativing the claim of the defendants, gave the jury to understand that the request was not good law, and that they might consider not only the acts of the overseers, but their declarations also.

Not only are the declarations and admissions of the overseers inadmissible to affect the settlement of a pauper, but the action and contracts of the town itself are equally futile and void. *Peru* v. *Turner*, 10 Maine, 185. *Turner* v. *Brunswick*, 5 Maine, 31. *New Vineyard* v. *Harpswell*, 33 Maine, 193. *Veazie* v. *Howland*, 47 Maine, 127. *Bridgewater* v. *Dartmouth*, 4 Mass. 273. *Brewster* v. *Harwich*, 4 Mass. 278. *Boylston* v. *Boylston*, 15 Mass. 261. *Norton* v. *Mansfield*, 16 Mass. 48. *Northfield* v. *Taunton*, 4 Met. 433. *Dartmouth* v. *Lakeville*, 7 Allen, 284. *New Bedford* v. *Taunton*, 9 Allen, 207. *Dartmouth* v. *Lakeville*, 9 Allen, 211.

*H. L. Whitcomb* with *E. Field*, for the plaintiffs.

VIRGIN, J. The principal issue submitted to the jury was, whether Abner B. Crocker, at the time of receiving the supplies sued for, had his settlement in the defendant town. The plaintiffs did not pretend that he gained one there in his own right, but claimed that he derived it from his father, Hiram Crocker. Neither did they claim that Hiram ever gained a settlement in Farmington in his own right, but that he, too, had a derivative settlement there from his father, Jabez B. Crocker, who, as they alleged, acquired his by "having his home therein, on March 21, 1821, without having received supplies as a pauper within one year before that date." R. S., c. 24, § 1. VII.

To sustain their respective sides of this issue and the questions bearing thereon, the parties introduced a large number of witnesses, together with considerable documentary evidence, comprising records of assessments, voting lists, etc. Among other things, the plaintiffs were permitted, against the seasonable objection of the defendants, to read to the jury from the order book of Farmington, the record of thirty-six orders, of various amounts and dates from September 25, 1839 to May 10, 1851, all drawn to pay the expenses of Hiram Crocker and family, not only while he was residing in Farmington, but for expenses incurred elsewhere, and for moving them back to Farmington.

The defendants presented four requests for instructions, none of which were given in terms, but all in substance so far as they were applicable. The defendants now contend that the fourth should have been given in terms. The jury were instructed in substance that the acts of town officers bind their town only when they are acting within the scope of their duty; that the statute requires overseers of the poor to relieve a person found destitute in their town at the town's expense; and that when thus acting their acts bind the town; that is, that the town is bound to pay the bills, and having paid, cannot recover back. The presiding justice then submitted to the jury these acts as matters of evidence; and after suggesting the liability of officers to make mistakes; that they may not have thoroughly investigated before acting, proceeded as follows: "What weight will you give these acts of the overseers on the subject as to where the pauper settlement of Hiram Crocker was. Because they only pertain to Hiram Crocker. Not that they will conclude the town. They are not conclusive as to where Hiram Crocker's real settlement was. They paid the bills on the ground that his settlement was in this town; but it may not have been. They are simply evidence for you to weigh with all the other evidence in the case," etc.

Forgetting their first request for instructions, the defendants contended at the argument of these exceptions that there was no question for the jury as to where Hiram Crocker's settlement was during the twelve years covered by the orders. There was no affirmative evidence that he acquired a settlement out of Farming-

ton, unless while living in New Vineyard, from 1853 to 1861. And the plaintiffs introduced this record as evidence tending to show that, for twelve years prior to 1853 at least, he was supported both in and out of Farmington by that town. Not that the town was bound by any admission, or by the recital of any incidental fact contained in the orders, (as was contended by the plaintiffs in *New Bedford* v. *Taunton,* 9 Allen, 207) but that these orders drawn by the officers and paid by the town constituted a course of action or conduct in times past tending to show that Hiram's settlement, during the period covered by the orders, was in Farmington. When the first order was drawn the facts with which they were dealing, and which it seems they supposed justified their action, were thirty-eight years younger than when the town was contesting their force at the trial. We have no doubt that they were legally admissible. In fact, the question is *res adjudicata* in this state.

In *Harpswell* v. *Phipsburg,* 29 Maine, 313, an action to recover for pauper supplies, evidence of a former suit by *Harpswell* v. *Phipsburg,* and a settlement of what was claimed therein for the support of the same pauper, was held to have been properly admitted. Wells, J., speaking for the court said : "What is done by the officers of a town, within the scope of their authority must necessarily affect the town in the same sense as if done by the town itself. As where a person is taxed, or his name is entered on the list of voters and he is allowed to vote, it is evidence of residence where he is so taxed or votes, not conclusive, but its weight and effect are to be determined by the jury. *Westbrook* v. *Bowdoinham,* 7 Maine, 363." After illustrating the rule in various ways, the opinion proceeds: " It [the settlement of former suit] was not a mere declaration made by an overseer, as was the case in *Corinna* v. *Exeter,* 13 Maine, 321, but an act done by two of the overseers. And all that was decided in *Peru* v. *Turner,* 10 Maine, 185, (cited by the defendants in the case at bar) was, that the note signed by overseers of Peru, and which contained an admission that the pauper was chargeable to Peru, was not conclusive by way of estoppel. The question made in that case was upon the effect, and not upon the admissibility of the evidence."

So in *New Vineyard* v. *Harpswell*, 33 Maine, 193, (also cited by the defendants) where it was contended that the defendants were estopped to deny the pauper's settlement to be in Harpswell, by reason of supplies having been furnished for the support of the pauper, for the six years next preceding the date of those sued for, by her brother, under a contract in writing with their overseers. But the court held that the town was not estopped, using the following language : " It is not within the official authority or duty of overseers of the poor to create or change the settlement of paupers, and neither their acts nor their admissions to that extent can bind or estop towns. Nor will a town be estopped to contest the settlement, by the mere fact that it has furnished supplies and support for the pauper. *Peru* v. *Turner*, 10 Maine, 185. *Harpswell* v. *Phipsburg*, 29 Maine, 313."

There is nothing in *Veazie* v. *Howland*, 47 Maine, 127, or in the Massachusetts cases cited by the defendants, inconsistent with the cases mentioned in this state.

The question has been before the court in New Hampshire several times and with the same result. While it is held there, as in this state and Massachusetts, that the settlement of paupers is settled by the statute, and cannot be changed by the acts of towns or their officers, otherwise than in accordance with the statutes, it is also held that the acts of the selectmen in paying bills incurred by other towns for the support of a pauper, may be shown in evidence, as tending to prove any fact necessary to establish the settlement of such pauper in that town. *Thornton* v. *Campton*, 18 N. H. 20, and cases cited. Also *Leach* v. *Tilton*, 40 N. H. 473.

We do not perceive the force of the proposition that, by refusing to give the fourth requested instruction, the charge " gave the jury to understand that the request was not good law, and that they might consider not only the acts of the overseers, but their declarations also ; " for the requests were put into the hands of the presiding justice before the arguments to the jury, who never saw or heard that there were any requests.

So far as the motion is concerned, we see no sufficient cause for disturbing the verdict. There were many witnesses, all of whom

the jury saw, and most of whom, being residents of the vicinage, they must have known. The evidence is conflicting. We cannot say the verdict is wrong; for there is ample testimony, if true, to sustain it, and its truthfulness the jury have deliberately passed upon. The motion based on newly discovered evidence is not prosecuted.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, PETERS and LIBBEY, JJ., concurred.